# UNITED STATES DISTRICT COURT FOR THE
# MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| RICHARD KAPER, *on behalf of himself and all others similarly situated,* ) ) ) | |
| Plaintiffs, ) ) | No. _____ |
| vs. ) ) | |
| PENNSYLVANIA GAME COMMISSION, ) ) | JURY TRIAL DEMANDED |
| Defendant. ) | |

## COMPLAINT

RICHARD KAPER ("Kaper" or "Plaintiff") on behalf of himself and all others similarly situated, by and through the undersigned counsel, alleges and states as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this class action against the PENNSYLVANIA GAME COMMISSION, ("PGC" or "Defendant") for violations of Title II of the Americans with Disabilities Act ("Title II of the ADA," "ADA," or "Title II"), 42 U.S.C. § 12101, *et seq.*, and Section 504 of the Rehabilitation Act of 1973 ("Section 504" or "Rehabilitation Act"), 29 U.S.C. § 794, *et seq.*

2. Title II and Section 504 make it illegal for public entities to deny qualified individuals with disabilities the benefits of their programs, services or activities. These statutes, their amendments, and the associated regulations that directly apply to the PGC seek to ensure equal opportunity for all people, including people with disabilities.

3. The PGC has systematically discriminated against individuals with mobility disabilities by failing to provide those individuals meaningful access to game lands across the Commonwealth and the hunting opportunities those lands are intended to provide.

4. The PCG has done so despite knowing that persons with mobility disabilities use its game lands, and despite offering hunting licenses specifically for such individuals.

5.     Mr. Kaper brings this action on behalf of himself and all others similarly situated for these violations of the broad protections afforded by the ADA and Section 504.

## JURISDICTION

6.     This action seeks compensatory damages, declaratory relief, and injunctive relief, brought pursuant to Title II of the ADA and Section 504.

7.     This Court has jurisdiction over claims arising under Title II of the ADA and Section 504 pursuant to 28 U.S.C. §§ 1331 and 1343.

8.     This Court has jurisdiction over Plaintiffs' claims for declaratory and injunctive relief pursuant to 28 U.S.C. §§ 2201, 2202 and Rule 65 of the Federal Rules of Civil Procedure.

9.     Title II of the ADA incorporates Section 504's enforcement provisions which do not require a plaintiff to exhaust his administrative remedies. See Helen L. v. DiDario, 46 F.3d 325, 330, n. 7, 331 (3d Cir.1995).

## VENUE

10.    Venue is proper pursuant to 28 U.S.C. § 1391(b), because Defendant resides within this District, and the events or omissions giving rise to the claims alleged herein occurred in this District.

## PARTIES

11.    Mr. Kaper is a 71-year-old disabled individual currently residing in Renfrew, Pennsylvania.

12.    Mr. Kaper has been diagnosed with and suffers from spinal stenosis, which is a narrowing of the spinal column as a result of arthritis.

13.    This disability negatively impacts his walking ability and mobile function.

14.    Mr. Kaper is a "qualified person with a disability" within the meaning of all applicable statutes and regulations, including 42 U.S.C. § 12131(2), 28 C.F.R. § 35.104, and 29 U.S.C. §

2

705(20)(B), and Mr. Kaper meets the essential eligibility requirements for the receipt of services or the participation in the relevant programs and/or activities provided by the PGC.

15. The PGC is an independent administrative commission of the Commonwealth of Pennsylvania, which is subject to the ADA and Section 504.

16. The PGC maintains a headquarters at 2001 Elmerton Avenue, Harrisburg, PA 17110. The PGC operates and maintains Regional Offices, with the Northcentral Regional Office located at 1566 South Route 44 Highway, Jersey Shore, PA 17740.

17. The PGC is a "public entity" as defined by the ADA, 42 U.S.C.A. § 12131, and has received federal financial assistance within the meaning of the Rehabilitation Act.

18. The PGC employs over 700 full-time employees, with a 2022 budget of over $250,000,000.

## LEGAL FRAMEWORK

19. The Rehabilitation Act of 1973 "was the first broad federal statute aimed at eradicating discrimination against individuals with disabilities." Helen L. v. DiDario, 46 F.3d 325, 330 (3d Cir. 1995).

20. Section 504 established that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a).

21. This created an affirmative obligation that "an otherwise qualified handicapped individual must be provided with meaningful access to the benefit that the grantee offers." Berardelli v. Allied Servs. Inst. of Rehab. Med., 900 F.3d 104, 115 (3d Cir. 2018) (quoting *Alexander v. Choate*, 469 U.S. 287, 301 (1985)).

3

22. Still, Section 504 had "shortcomings and deficiencies" that were impeding the success of eliminating disability discrimination. McGann v. Cinemark USA, Inc., 873 F.3d 218, 221 (3d Cir. 2017).

23. Because of this, Congress enacted the ADA to create a "clear and comprehensive national mandate to eliminate discrimination against individuals with . . . disabilities across the United States." Id.

24. Congress designed the ADA to broadly compliment Section 504, leaving intact the "scope of protection . . . under [Section 504]," Menkowitz v. Pottstown Mem'l Med. Ctr., 154 F.3d 113, 120 (3d Cir. 1998), but extending its reach beyond federally funded programs to three "major areas of public life," PGA Tour, Inc. v. Martin, 532 U.S. 661, 675 (2001), including public entities and their programs (Title II – 42 U.S.C. §§ 12131–12165).

25. Congress enacted Title II against a backdrop of pervasive unequal treatment in the administration of state services and programs. Tennessee v. Lane, 541 U.S. 509, 524 (2004).

26. Given their similar language and related purposes, Congress has directed that Title II of the ADA and Section 504 be construed and applied consistently. Yeskey v. Com. of Pa. Dep't of Corr., 118 F.3d 168, 170 (3d Cir. 1997), aff'd sub nom. Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206 (1998).

27. In order to state a claim under either the ADA or Section 504, a plaintiff must allege that he is a qualified individual with a disability, who was precluded from participating in a program, service, or activity, or otherwise was subject to discrimination by reason of his disability. Furgess v. Pennsylvania Dep't of Corr., 933 F.3d 285, 288–89 (3d Cir. 2019).

28. The phrase "service, program, or activity" under Title II, like "program or activity" under Section 504, is "extremely broad in scope and includes anything a public entity does." Id. at 289.

## FACTS

### A. THE PGC AND THE PENNSYLVANIA ELK TAG

29. There is a yearly, randomized lottery for the limited and coveted Pennsylvania elk tag.

30. For the 2022/2023 Pennsylvania elk hunting season, over 100,000 citizen and non-citizen applicants entered for only 178 elk tags covering all three seasons, which included archery season from September 10-24, 2022, firearms general season from October 31 - November 5, 2022, and late season from December 31 - January 7, 2023.

31. Mr. Kaper has been entering the elk tag lottery for over 20 years and entered the lottery for the 2022/2023 Pennsylvania elk hunting season.

32. Mr. Kaper intends to continue entering the lottery.

33. The 2022 revenue from the elk tag lottery totaled over $1,200,000, which was allocated to the PGC's general fund.

34. Based on elk movements and behavior, the PGC designates fourteen (14) specific elk hunt zones and allocates a certain number of cow (female) and bull (male) tags to each zone for each specific hunting season.

35. These zones are contained in an elk management area in north central Pennsylvania.

36. For the 2022/2023 season, Mr. Kaper was drawn for and awarded a late season cow tag for Zone 13, which includes part of Centre and Clinton counties.

37. Mr. Kaper maintained a valid Pennsylvania hunting license at all relevant times.

38. Mr. Kaper intends to continue to maintain his hunting license.

### B. STATE GAME LANDS

39. The Commonwealth, through the PGC, purchases, manages, and maintains "State Game Lands" primarily for outdoor recreation in the form of sport‑hunting.

40. State Game Lands now total more than 1.5 million acres across the Commonwealth.

41. The PGC states, "[t]he primary purpose of these lands is the management of habitat for wildlife and [to] provide opportunities for lawful hunting and trapping." See https://www.pgc.pa.gov/HuntTrap/StateGameLands/Pages/default.aspx.

42. The PGC's purchase, maintenance, management, and implementation of State Game Lands for the purpose of providing opportunities for lawful hunting and trapping is a "service, program, or activity" under the ADA and Section 504.

43. Within Zone 13, the Commonwealth, through the PGC, manages and maintains State Game Lands No. 100.

44. Every disabled Pennsylvania hunter that has purchased a hunting license has aided the purchase of the State Game Lands in the form of revenue to the PGC.

45. State Game Lands No. 100 consists of at least 21,054 acres, located in Centre and Clearfield Counties.

C. DISABLED ACCESS ROUTES AND HUNTER PERMITS

46. The PGC has a stated purpose of "promot[ing] public access to State game lands for persons with mobility disabilities," specifically acknowledging its obligations under the ADA and Section 504. 58 Pa. Code. § 135.48.

47. To further this purpose, the PGC, by law, is required to maintain "designated routes" in State Game Lands for "[p]ersons in possession of a valid disabled person access permit issued under Chapter 147, Subchapter AA (relating to disabled person access permit)." Id. § 135.51(a)

48. "Designated routes" are "determined by route assessment criteria approved by the Director [of the PGC]" and must be "classified to authorize mobility device and motor vehicle combined access or mobility device only access." Id.

49. "Designated routes" are required to be "open for use by persons with disabled person access permits from 14 days prior to the opening day of the archery season to the closing day of the late muzzleloader/archery season and during the spring turkey season." Id. § 135.51(b).

50. Pennsylvania law provides for various permits for hunters with disabilities that are required to access designated disabled access routes.

51. Mr. Kaper applied for and was granted two such permits prior to and specifically for elk hunting season.

52. Mr. Kaper intends to continue to apply for such permits.

53. One such permit is found at 34 Pa.C.S. § 2923, and is identified as a Disabled Persons Permit, which allows the individual to use a vehicle as a blind for hunting and possess a loaded firearm in a parked vehicle.

54. Successful applicants must prove their disability to the PGC, which Mr. Kaper did.

55. Because of his disability, Mr. Kaper applied and was approved for a disabled permit to use his UTV (Mahindra 750) as a blind under 34 Pa.C.S. § 2923 (Permit #56388).

56. Mr. Kaper's UTV qualified for the applicable disabled permit.

57. Another disabled permit is found at 58 Pa. Code. § 147.1023, and is identified as a disabled person access permit.

58. This permit "authorizes the permittee to use mobility devices and motor vehicles to access designated routes on State game lands as . . . set forth in Chapter 135, Subchapter C (relating to State game lands)." Id.

59. Mr. Kaper was granted a Disabled Persons Permit under 58 Pa. Code. § 147.1023 prior to elk hunting season.

D. THE PGC FAILS TO PROVIDE FULL AND EQUAL ACCESS TO STATE GAME LANDS

60. Despite Pennsylvania codifying into law the PGC's obligation to provide meaningful and equal access to the State Game Lands and the hunting opportunities those lands are intended to provide, the PGC has failed to provide hunters with disabilities meaningful, full, and equal access to its programs, services, and activities.

61. More specifically, the PGC has failed to provide hunters with disabilities meaningful, full, and equal access to State Game Lands and the hunting opportunities those lands are intended to provide because the route selection process that is implemented by the PGC, which applies uniformly to the State Game Lands, has failed to ensure that a sufficient number of disabled access routes exist in the State Game Lands, and the design and maintenance policy that is implemented by the PGC, which applies uniformly to the few disabled access routes that exist, has failed to ensure that those routes are or remain accessible to or usable by hunters with disabilities.

62. Mr. Kaper's experience is illustrative of these failures.

63. Indeed, the portion of the State Game Lands that Mr. Kaper attempted to access had only three disabled access routes for over 21,000 acres of land, and those routes were either entirely inaccessible or, once accessible, were not traversable or usable by hunters with disabilities.

64. From December 31, 2022, to January 7, 2023, Mr. Kaper attempted to access State Game Land No. 100 for the late season elk period.

65. Mr. Kaper was awarded a late season cow tag and hired an elk guide service to access State Game Land No. 100.

66. Mr. Kaper spent over $3,000 for his trip, which included lodging, elk hunting tag, travel, and associated hunting expenditures.

67. Mr. Kaper intends to continue attempting to access the State Game Lands.

68. Upon his arrival, Mr. Kaper discovered that the PGC established only three disabled routes in the entirety of the at least 21,054 acres consisting of State Game Land No. 100.

69. All three routes were next to one another in the northeast quadrant of State Game Land No. 100, had gates, and were locked.

70. None of the three routes were conspicuously posted with travel or access limitations.

71. The first route was completely inaccessible for Mr. Kaper's vehicle because the entrance was not wide enough to accommodate the vehicle, even though Mr. Kaper's vehicle specifically qualified for the permits to access these areas.

72. This forced Mr. Kaper to attempt to walk into the first trail.

73. Mr. Kaper fell two times on State Game Lands No. 100 attempting to access areas available for hunters because of the first route's complete inaccessibility and Mr. Kaper's inability to meaningfully access the same areas provided for non-disabled hunters.

74. The PGC forbids disabled hunters from driving off the designated trails.

75. The limited walking that Mr. Kaper was capable of was wasted on traversing disabled trails that he legally should have been able to drive on.

76. Mr. Kaper was only able to access two of the trails by driving around the gate but for only a short distance given the narrowness of the trails and a tree that had fallen across the path.

77. The PGC has an ongoing obligation under the ADA and Section 504 to provide a sufficient number of disabled hunting access routes, and maintain and manage every disabled hunting access route that exists on the State Game Lands in a way that provides meaningful access to disabled hunters.

78. The PGC has failed in their ongoing obligation under the ADA and Section 504 to maintain, manage, or provide disabled hunting access routes on State Game Lands in a way that provides meaningful and equal access to disabled hunters.

79. Across the Commonwealth, disabled hunters are being denied meaningful and equal access to the State Game Lands they help support and the hunting opportunities the PGC purportedly provides.

80. There was no meaningful access to the same lands hunted and traversed by non-disabled persons, and Mr. Kaper was denied equal opportunity.

81. Tellingly, one of the land managers for the area informed Mr. Kaper that the PGC obviously needs to reassess the disabled route access trails.

82. After voicing concerns to the local land manager, Mr. Kaper was informed after the fact that additional locked gates likely could have been opened for him.

83. In addition to violating the ADA, this also violates 58 Pa. Code § 135.51(b), which requires "designated routes to be open for use by persons with disabled person access permits from 14 days prior to the opening day of the archery season to the closing day of the late muzzleloader/archery season."

84. If true, the PGC has admitted that it is withholding additional access to disabled hunters.

85. If true, the PGC fails to advertise the possibility of disabled hunters using motor devices and motor vehicles on additional, unmarked, and undesignated trails, in violation of the ADA, Section 504, their implementing regulations, and Pennsylvania law.

86. Mr. Kaper was left with three trails, all close together and mostly inaccessible, providing him limited access to only a very small portion of State Game Lands No. 100, when other gates could have been accessed but were locked.

87. The PGC is aware of disabled hunters that will be hunting these different zones based on the permits applied for and approved.

88. It is clear that the PGC showed a reckless disregard for the federally-protected rights of disabled hunters.

89. The nine other individuals in Mr. Kaper's hunting group (who were not disabled) were able to traverse significantly more area and hunt in locations even around the disabled access routes that Mr. Kaper was unable to traverse without falling.

90. Mr. Kaper, as a qualified individual with a disability, was excluded from and denied the public game land benefits provided by the PGC, even in light of a stated purpose of "promot[ing] public access to State game lands for persons with mobility disabilities." 58 Pa. Code. § 135.48; see Se. Cmty. Coll. v. Davis, 442 U.S. 397 (1979) (stating that meaningful access requires "evenhanded treatment and the opportunity for handicapped individuals to participate in and benefit from programs").

91. Mr. Kaper attempted to remedy the situation through dialogue by contacting the PGC and noting the violations that have occurred.

92. In waiting four months to provide Mr. Kaper a response, the Director of the PGC issued correspondence failing to address the violations of the ADA and Section 504 and failing to forward it to any grievance officer tasked with investigating such complaint.

93. Upon information and belief, the PGC performed no investigation of the complaint that Mr. Kaper communicated to the PGC alleging noncompliance with the ADA and Section 504, in violation of 28 CFR § 35.107.

94. Upon information and belief, the PGC failed to conduct a comprehensive assessment of the land it controls and/or owns with regard to providing, managing, and maintaining meaningful and equal access to hunters with disabilities.

95.     If performed, the PGC would or should have recognized the failure of its methods, policies, procedures, and practices in the provision of its programs, services, and activities, and in the management, maintenance, and implementation of its policies.

96.     Upon information and belief, not all state game lands have disabled route access trails, and as explained above, those that have such routes do not have a sufficient number of trails and the trails that do exist are not properly maintained or managed to provide meaningful or equal access.

## CLASS ALLEGATIONS

97.     Mr. Kaper brings this action individually and on behalf of all Pennsylvania residents who have a mobility disability and have attempted or will attempt to access the State Game Lands under Federal Rule of Civil Procedure 23(b)(2) and (b)(3).

98.     Each member of the class is a "qualified person with a disability" and/or a person with a "disability" under Title II of the ADA, 42 U.S.C. § 12131(2), and Section 504, 29 U.S.C. § 794.

99.     Defendant has failed to comply and continues to fail to comply with the ADA and Section 504 in its implementation of administrative methods, policies, procedures, and practices with regard to the provision, maintenance, management, and implementation of the State Game Lands and the opportunities for lawful hunting that the State Game Lands are intended to provide.

100.    Defendant has not adopted and does not enforce appropriate administrative methods, policies, procedures, and/or practices to ensure that it is in compliance with the ADA and Section 504, and to ensure nondiscrimination against persons with disabilities and equal access to programs, services, and activities for persons with disabilities.

101.    The persons in the class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court.

102. Upon information and belief, more than 5,000 disabled resident hunter permits were issued in 2022 alone.

103. The common questions of law and fact, shared by Mr. Kaper and all class members, include but are not limited to: (a) whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, and/or Section 504, 29 U.S.C. § 794 *et seq.*, by failing to provide, maintain, manage, or implement disabled access route trails within State Game Lands useable by persons with disabilities to provide said persons with meaningful access and hunting opportunities; (b) whether Defendant is violating Title II of the ADA, 42 U.S.C. § 12131, *et seq.*, and/or Section 504, 29 U.S.C. § 794 *et seq.*, by failing to provide a sufficient amount of disabled access route trails on State Game Lands; (c) whether Defendant, by its actions and omissions alleged herein, has had a policy of discriminating against Plaintiff and other persons with mobility disabilities in violation of applicable federal disability access laws; and (d) whether Defendant has failed to direct a sufficient amount of its resources to the provision, management, maintenance, and implementation of disable access route trails.

104. The common questions at issue in this case predominate over any individual issues.

105. Named Plaintiff's claims are typical of the claims of the class as a whole because they arise from the same course of conduct engaged in by Defendant, and Plaintiff and the class are similarly affected by Defendant's failure to provide meaningful access to hunting opportunities through the failed provision, management, maintenance, and implementation of disabled access route trails.

106. Named Plaintiff is an adequate class representative because his disabled hunting peers are directly impacted by Defendant's failure to provide meaningful access to disabled hunters, Plaintiff's interests are not antagonistic to, or in conflict with, the interests of the class, and Plaintiff retained counsel who are competent and experienced in litigating complex class actions.

107. The attorneys representing the class are highly trained, duly qualified, and very experienced in representing plaintiffs in civil rights class actions for injunctive relief; have conducted an extensive investigation of the class claims; are experienced in handling class actions and complex litigation; are well-versed in applicable statutes, regulations and case precedent; and will commit the resources necessary to represent the class.

108. Defendant has acted and/or failed to act on grounds generally applicable to the classes as a whole, thereby making appropriate final declaratory and injunctive relief with respect to the classes as a whole.

<u>**COUNT I**</u>
<u>**VIOLATIONS OF TITLE II OF THE AMERICANS WITH DISABILITY ACT**</u>
**42 U.S.C. §§ 12101, *ET SEQ.***

109. Plaintiff repeats and realleges all other paragraphs in his Complaint, as if fully set forth herein, and brings this claim on behalf of the class identified above.

110. Title II of the ADA, 42 U.S.C. § 12132, prohibits a public entity from excluding a person with a disability from participating in, or otherwise benefitting from, a program of the public entity, or otherwise discriminating against a person on the basis of disability: "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity."

111. Mr. Kaper is and was qualified to participate in the hunting opportunities provided by the Commonwealth of Pennsylvania through the Defendant and has a "disability" within the meaning of the ADA.

112. At all times relevant to this action, Defendant was and is a public entity within the meaning of 42 U.S.C. § 12131 and 28 C.F.R. § 35.104. 68.

113. Title II of the ADA requires public entities, including the PGC, to operate each of its programs, services, or activities "so that, when viewed in its entirety, it is readily accessible to and useable by individuals with disabilities." 28 C.F.R. § 35.150; see also 28 C.F.R. §§ 35.149, 35.151.

114. The PGC's provision, maintenance, and management of the State Game Lands constitutes a program, service, or activity under Title II of the ADA, where the PGC provides hunting opportunities to Pennsylvania hunting license holders. 28 C.F.R. § 35.102.

115. Due to the lack of accessible disabled access routes, and the PGC's failure to properly design or maintain the few routes that do exist, the PGC's program is not fully, equally, or meaningfully accessible to Plaintiff and the classes when viewed in its entirety.

116. Defendant has been given the statutory responsibility to manage, maintain, and implement the State Game Lands and ensure that those lands are accessible by providing, designing, and maintaining disabled access routes, but through its administrative methods, policies, and practices, Defendant failed to provide meaningful access to hunting opportunities for disabled hunters.

117. Indeed, Defendant has not provided a sufficient number of access routes and has failed to maintain the few access routes that exist by, among other things: failing to keep access trails clear; failing to provide accessible entrances; failing to remove obstructions; failing to provide long enough trails to provide meaningful access to the hunting opportunities provided by the PGC; failing to ensure sufficiently wide paths of travel for modern mobility devices and motor vehicles; and various other failures to maintain accessible features.

118. As a direct and proximate result of the aforementioned acts and omissions, Plaintiff and the class have been and continue to be injured.

119. Defendant's acts and omissions stated herein violate its own stated purpose of promoting public access to State Game Lands for persons with mobility disabilities. See 58 Pa. Code 138.48.

120. Defendant's conduct constitutes an ongoing and continuous violation of Title II of the ADA and, as a result, Plaintiff and the Class are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees, expenses, and costs, and compensatory damages.

## COUNT II
### VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT OF 1973
### 29 U.S.C. §§ 794, *ET SEQ.*

121. Plaintiff repeats and realleges all other paragraphs in his Complaint, as if fully set forth herein, and brings this claim on behalf of the class identified above.

122. Section 504 provides in pertinent part: "No otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance[.]" 29 U.S.C. § 794.

123. Named Plaintiff is qualified to participate in Defendant's disabled access hunting program by virtue of his successful application for a hunting license and disabled permits and has a disability within the meaning of Section 504. See 29 U.S.C. § 705(20)(B) (referencing 42 U.S.C. § 12102); see also 28 C.F.R. § 39.103.

124. Defendant is a recipient of federal financial assistance sufficient to invoke the coverage of Section 504 and has received such federal financial assistance at all times relevant to the claims asserted in this Complaint.

125. Defendant and its agents and employees have violated and continue to violate Section 504 and the regulations promulgated thereunder by excluding Plaintiff and the Class from participation in, denying Plaintiff and the Class the benefits of, and subjecting Plaintiff and the Class, based solely by reason of their disabilities, to discrimination in the benefits and services of Defendant's disabled hunter access program throughout the Commonwealth.

126. As a direct and proximate cause of the aforementioned acts, Plaintiff and the Class have been and continue to be injured.

127. Defendant's conduct constitutes an ongoing and continuous violation of Section 504 and, as a result, Plaintiff and the Class are entitled to declaratory and injunctive relief as well as reasonable attorneys' fees and costs, and compensatory damages.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests judgment in his favor, as follows:

A. For the Court to accept jurisdiction over this matter;

B. Certification of Plaintiff's claims as a class action and certification of Plaintiff as class representative and his counsel as class counsel;

C. For compensatory damages to Plaintiff and the class members;

D. Replacement late season cow elk tag in Zone 13 for Plaintiff and appropriate elk tags for the class members that won Pennsylvania's elk tag lottery but were unable to access State Game Lands to use their tags.

E. Issuance of a judgment declaring that Defendant's conduct as alleged herein has violated and continues to violate Title II of the ADA and Section 504;

F. Issuance of an order and judgment enjoining Defendant from violating Title II of the ADA and Section 504 and requiring Defendant to develop and implement a remedial plan to remedy Defendant's past and ongoing violations of the statutes;

G. An order that, at a minimum, requires Defendant to:

1) Ensure that State Game Lands have a sufficient amount of disabled access routes such that permitted individuals with mobility disabilities enjoy equal and meaningful access to the State Game Lands and hunting opportunity the State Game Lands provide.

2) Ensure that the PGC constructs, maintains, manages, and implements disabled access routes in a way that is readily accessible to and usable by permitted individuals with mobility disabilities;

3) Ensure that the PGC remediates, clears, and repairs all present disabled access routes that are made available to permitted individuals with mobility disabilities;

4) Ensure that the PGC performs prompt remedial measures to cure past violations under Title II of the ADA and Section 504 of its duty to provide meaningful and equal access to hunting opportunities;

5) Ensure that all new construction or designations of disabled access routes fully comply with then-existing accessibility design standards;

6) Adopt and implement administrative methods, policies, and practices to construct, maintain, manage, and implement accessible disabled access routes including, without limitation, ensuring that trees and other objects do not block the pedestrian right-of-way, that the disabled access routes are navigable, wide enough to manage larger motor vehicles, and long enough and numerous enough to provide meaningful access to the hunting opportunities provided by the PGC;

7) Remain under this Court's jurisdiction until Defendant fully complies with the Orders of this court; and

8) Prepare a complete Self-Evaluation and a complete and publicly available Transition Plan regarding the accessibility of the disabled access route trails in compliance with Title II of the ADA and Section 504;

H. Payment of Plaintiff and the Class's reasonable attorneys' fees, expenses and costs; and

I. Such other and further relief as the Court deems just and proper.

Respectfully Submitted,

Date: January 28, 2024

| **THE LAW OFFICE OF THOMAS M. PIÉ, JR., LLC** | **EAST END TRIAL GROUP LLC** |
|---|---|
| /s/ Thomas M. Pié, Jr. | /s/ Kevin Abramowicz |
| Thomas M. Pié, Jr., Esquire<br>PA ID No. 322834<br><br>P.O. Box 211<br>Evans City, PA 16033<br>P: (740) 391-2760<br>F: (888) 293-0295<br>tmp@pielaw.net | Kevin Abramowicz<br>Kevin Tucker<br>Chandler Steiger<br>Stephanie Moore<br>6901 Lynn Way, Suite 215<br>Pittsburgh, PA 15208<br>kabramowicz@eastendtrialgroup.com<br>ktucker@eastendtrialgroup.com<br>csteiger@eastendtrialgroup.com<br>smoore@eastendtrialgroup.com |

*Attorneys for Plaintiff*