**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD KAPER,

                     Plaintiff,

       v.

THE PENNSYLVANIA GAME
COMMISSION,

                 Defendant.

No. 1:24-cv-164

Judge Conner

Electronically Filed Document

**THE PENNSYLVANIA GAME COMMISSION'S BRIEF IN
SUPPORT OF ITS MOTION TO DISMISS RICHARD
KAPER'S FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**I.    Statement of Facts**........................................................................... 2

    1.    Hunting in Pennsylvania ....................................................... 2

    2.    Mr. Kaper's Alleged Hunting Experience ........................... 3

**II.   Procedural History** ..................................................................... 4

**III.  Questions Presented**.................................................................. 5

**IV.   Argument**................................................................................... 5

    1.    Mr. Kaper fails to plausibly allege that the State Game Lands, when "viewed in [their] entirety," are not "readily accessible to and usable by" persons with disabilities. ........................................... 5

    2.    Mr. Kaper fails to plausibly allege entitlement to damages............. 12

    3.    A replacement elk tag will not remedy the purported violations..... 18

**V.    Conclusion** .............................................................................. 19

## <u>TABLE OF AUTHORITIES</u>

### Cases

*Alexander v. Choate*, 469 U.S. 287 (1985) ........................................................... 11

*Baxter v. Pennsylvania Dep' of Corr.*, 661 F. App'x 754 (3d Cir. 2016) .............. 8

*Brown v. County of Nassau*, 736 F. Supp. 2d 602 (E.D.N.Y. 2010) .................. 1, 9

*Creel v. Rowan Univ.*, 2017 WL 2734709 (D.N.J. June 26, 2017) .................. 1, 10

*Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982 (9th Cir. 2014) .................... 9

*Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199 (3d Cir. 2008) ................................................................................................ 16

*Doe v. Cnty. of Ctr., PA*, 242 F.3d 437 (3d Cir. 2001) ........................................ 12

*Durham v. Kelley*, 82 F.4th 217 (3d Cir. 2023) .................................................... 12

*Dytch v. Lazy Dog Restaurants*, 2018 WL 9412715 (N.D. Cal. Apr. 18, 2018) .. 11

*Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009) .................................... 5

*G.P. v. Claypool*, 466 F. Supp. 3d 875 (N.D. Ill. 2020) .................................... 7, 9

*Glover v. City of Laguna Beach*, 2016 WL 11520619 (C.D. Cal. Feb. 10, 2016) ... ......................................................................................................................... 19

*Haas v. Quest Recovery Servs., Inc.*, 247 F. App'x 670 (6th Cir. 2007).............. 17

*Haberle v. Troxell*, 885 F.3d 170 (3d Cir. 2018) ........................................... 14, 15

*Imprisoned Citizens Union v. Ridge*, 169 F.3d 178 (3d Cir. 1999) ...................... 18

*In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410 (3d Cir. 1997) ...... 13, 16

*Jaludi v. Citigroup*, 2020 WL 7086142 (M.D. Pa. Aug. 12, 2020) ...................... 16

*Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164 (9th Cir. 2017) ........ 1, 10

*Lewis v. Casey*, 518 U.S. 343 (1996) ................................................................... 18

*Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266 (3d Cir. 2012) .............................. 6

*Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221 (S.D.N.Y. 1999).................... 6

*S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248 (3d Cir. 2013) ........
............................................................................................................. 2, 12, 14, 15

*Twede v. Univ. of Washington*, 309 F. Supp. 3d 886 (W.D. Wash. 2018) ....... 6, 14

## Statutes and Regulations

Fed. R. Civ. P. 12 ................................................................................................... 5

34 Pa. C.S. § 2308 ................................................................................................ 3

34 Pa. C.S. § 2503 ................................................................................................ 3

34 Pa. C.S. § 2706.2 ........................................................................................... 19

34 Pa. C.S. § 2923 .......................................................................................... 3, 13

58 Pa. Code § 135.48 ........................................................................................... 2

58 Pa. Code § 135.49 ............................................................................... 3, 10, 13

58 Pa. Code § 135.50 ...................................................................................... 2, 3, 8

58 Pa. Code § 135.51 .................................................................................... 2, 4, 11

58 Pa. Code § 135.53 ...................................................................................... 9, 10

58 Pa. Code § 147.1023 .................................................................................... 3, 8

29 U.S.C. § 794 .................................................................................................... 6

42 U.S.C. § 12132 ................................................................................................ 6

28 C.F.R. § 35.150 ......................................................... 6, 7, 11, 14, 15, 17

28 C.F.R. § 42.521 ............................................................................................... 6

Plaintiff Richard Kaper alleges he is a mobility-disabled hunter. He alleges he won an elk tag and sought to utilize it at one of the hundreds of State Game Lands owned and maintained by Defendant the Pennsylvania Game Commission (the "PGC"). He also alleges he was unable to drive his utility vehicle onto that particular State Game Land and hunt from it because certain gates were locked, and certain paths were unavailable or too narrow. Mr. Kaper, however, later learned additional gates could have been opened for him. He nevertheless chose to sue the PGC, alleging that the PGC's maintenance of the State Game Lands violated Title II of the Americans with Disabilities Act (the "ADA") and the Section 504 Rehabilitation Act (the "RA").

Mr. Kaper's alleged "anecdotal experience[,]" while perhaps unfortunate, "do[es] not establish that the [State Game Lands] program, consisting of [1.5 million acres], is inaccessible when viewed in its entirety." *Kirola v. City & Cnty. of San Francisco*, 860 F.3d 1164, 1184 (9th Cir. 2017). His allegations about the number and length of disabled-access routes on the State Game Lands are irrelevant, since neither the ADA nor the RA require a public entity to "make each and every portion of a [location] readily accessible[.]" *Brown v. County of Nassau*, 736 F. Supp. 2d 602, 612 (E.D.N.Y. 2010). And his "generalized allegations" about the design and maintenance of those routes are "conclusory and give no indication of the factual grounds for claiming lack of access[.]" *Creel v. Rowan Univ.*, 2017 WL 2734709, at

1

*4 (D.N.J. June 26, 2017). This Court should therefore dismiss Mr. Kaper's Amended Complaint in its entirety.

If it does not, this Court should dismiss Mr. Kaper's request for compensatory damages, because he does not allege that the PGC knew that the ADA or RA were "substantially likely to be violated." *S.H. ex rel. Durrell v. Lower Merion Sch. Dist.*, 729 F.3d 248, 265 (3d Cir. 2013). The Court should also dismiss Mr. Kaper's request for replacement elk tags, because receiving those tags will not remedy the purported statutory violations.

## I.    Statement of Facts

### 1.    Hunting in Pennsylvania

The PGC owns and manages more than 1,500,000 acres of State Game Lands, which provide opportunities for lawful hunting and trapping. ECF No. 10 ¶¶ 29–38. The PGC is committed "to promot[ing] public access to State [G]ame [L]ands for persons with mobility disabilities[.]" 58 Pa. Code § 135.48. So the PGC allows "[p]ersons with mobility disabilities [to] use wheelchairs to access any portion of State [G]ame [L]ands where pedestrian foot travel is authorized." *Id.* § 135.50(a). The PGC also allows mobility-disabled persons to use "mobility devices" on designated routes on State Game Lands. *Id.* § 135.51(a). The definition of "mobility device" is broad; it encompasses any "power-driven device, other than a wheelchair [or motor vehicle], that is used by a person with a mobility disability for the purpose

2

of locomotion." *Id.* § 135.49. It specifically contemplates everything from Segways to golf carts to ATVs. *Id.*

No permit is required to use wheelchairs on State Game Lands. *Id.* § 135.50(b). But individuals wishing to drive a mobility device on the designated routes must obtain a permit under 58 Pa. Code § 147.1023. Additionally, in light of the general ban against hunting from, or possessing loaded firearms in, motorized vehicles in Pennsylvania, *see* 34 Pa. C.S. §§ 2308(a)(7); 2503(a), persons wishing to ***hunt*** on State Game Lands while sitting in a motorized wheelchair or a mobility device must also obtain a permit under 34 Pa. C.S. § 2923(a).

### 2.   Mr. Kaper's Alleged Hunting Experience

Mr. Kaper alleges that he is a hunter with a mobility disability. ECF No. 10 ¶¶ 12–13. He also alleges that he has obtained permits under both 58 Pa. Code § 147.1023 and 34 Pa. C.S. § 2923(a). *Id.* ¶¶ 51–59.

Mr. Kaper alleges that, during the 2022–2023 hunting season, he won an elk tag from the PGC. *Id.* ¶ 45. The PGC conducts a lottery to distribute these tags, which allow the holder to hunt either male or female elk during a designated period in one of fourteen designated Zones throughout the Commonwealth. *Id.* ¶¶ 38–44. Mr. Kaper alleges that the elk tag he won permitted him to hunt female elk in Zone No. 13 from December 31, 2022, through January 7, 2023. *Id.* ¶ 81.

Zone No. 13 contains State Game Land No. 100, which comprises 21,054

acres. *Id.* ¶¶ 81, 85. Pursuant to 58 Pa. Code § 135.51(a), the PGC has established three routes on State Game Land No. 100 on which persons with mobility disabilities may use mobility devices or motor vehicles. *Id.* ¶ 85.

Mr. Kaper alleges that he went to State Game Land No. 100 during the assigned period with his chosen mobility device, a Mahindra 750 UTV. *Id.* ¶¶ 55, 88. He alleges, however, that the gates to all three designated routes were locked, and that the entrance to the first designated route "was not wide enough to accommodate" his utility vehicle. *Id.* ¶¶ 86, 88. Mr. Kaper was "able to access [the other] two [designated routes] by driving around the[ir] gate[s]," but he alleges that he could travel "only a short distance given the narrowness of the trails and a tree that had fallen across the path." *Id.* ¶ 93. Mr. Kaper does not allege that he informed anyone of his access problems while there. Instead, he "was informed after the fact that additional locked gates likely could have been opened for him." *Id.* ¶ 100; *see also id.* ¶ 106 ("[O]ther gates could have been accessed but were locked.").

## II.   Procedural History

Mr. Kaper initiated this action by filing a Complaint on January 29, 2024. ECF No. 1. The PGC moved to dismiss that Complaint on March 13, 2024. ECF No. 7. Mr. Kaper then filed an Amended Complaint. ECF No. 10. No substantive proceedings on that operative pleading have yet occurred.

### III.   Questions Presented

1.      Whether Mr. Kaper's Complaint should be dismissed in its entirety because his allegations do not establish that the State Game Lands, "when viewed in [their 1,500,000 acre] entirety," are not "accessible to and usable by" persons with disabilities. *Suggested Answer: Yes.*

2.      Whether Mr. Kaper's request for compensatory damages should be dismissed because he has failed to allege that the PGC knew that a violation of the ADA or RA was "substantially likely" to occur. *Suggested Answer: Yes.*

3.      Whether Mr. Kaper's request for an injunction requiring the PGC to issue him another elk tag should be dismissed because that relief will not remedy the purported ADA and RA violations. *Suggested Answer: Yes.*

### IV.   Argument

A federal court considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6) must accept the truth of all well-pled factual allegations but disregard all conclusory legal allegations. If the factual allegations do not show that the plaintiff has a plausible claim for relief, the court should grant the motion and dismiss the claim. *See generally Fowler v. UPMC Shadyside*, 578 F.3d 203, 210–11 (3d Cir. 2009).

1.      <u>Mr. Kaper fails to plausibly allege that the State Game Lands, when "viewed in [their] entirety," are not "readily accessible to and usable by" persons with disabilities.</u>

Under Title II of the ADA and § 504 of the RA, persons with disabilities

cannot be excluded from "services, programs, or activities" provided by a public entity, 42 U.S.C. § 12132 (ADA), or by a recipient of federal funds, 29 U.S.C. § 794(a) (RA). Regulations implementing the ADA and the RA make it clear, however, that public entities and federal-fund recipients need ***not*** "make ***each*** of [their] existing facilities . . . accessible to and usable by" persons with disabilities. 28 C.F.R. § 35.150(a)(1) (ADA); *see also id.* § 42.521(a) (RA).[1] Instead, entities and recipients need only ensure that each service, program, or activity is accessible and usable "***when viewed in its entirety***[.]" *Id.* § 35.150(a). In other words, "individual[] noncompliant elements of a program or service are not necessarily relevant to whether a program—in its entirety—violates the ADA," and courts routinely dismiss ADA and RA claims when a plaintiff can muster nothing more than "allegations relat[ing] to particular deficiencies in individual . . . facilities." *Twede v. Univ. of Washington*, 309 F. Supp. 3d 886, 904 (W.D. Wash. 2018) (dismissing claim); *see also Pascuiti v. New York Yankees*, 87 F. Supp. 2d 221, 223 (S.D.N.Y. 1999) ("The City argues that . . . the Court must look at the accessibility of the Stadium as a whole, not at individual elements. The City is correct.").

Mr. Kaper believes there are two "programs" at issue in this lawsuit: (1) the

---

[1] The ADA and the RA are "to be interpreted consistently, and . . . have the same standard for determination of liability." *Macfarlan v. Ivy Hill SNF, LLC*, 675 F.3d 266, 274 (3d Cir. 2012).

PGC's provision of State Game Lands for hunting and trapping in general, *see* ECF No. 10 ¶ 32; and (2) the PGC's provision of State Game Lands for the hunting and trapping of elk, *see id.* ¶ 37. This Court should reject the second proposed program (the one focusing only on the hunting and trapping of elk) as an end-run around 28 C.F.R. § 35.150(a). That provision declares that the ADA does not "require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities," but instead only requires a public entity to provide disabled individuals "meaningful access" to "the service, program, or activity, when viewed in its entirety[.]" Permitting Mr. Kaper (or any other plaintiff) to myopically focus on one particular aspect of a public entity's program would defeat the entire purpose of that safe harbor. *See G.P. v. Claypool*, 466 F. Supp. 3d 875, 888 (N.D. Ill. 2020) ("[T]he 'program' in question should not be defined too narrowly."); *cf. id.* at 890 ("Plaintiff's counterarguments would make a hash of the regulatory framework. Plaintiff argues that each school is a program[, but t]his argument conflates facilities with programs, and has been widely rejected."). This Court can and should therefore foreclose that avenue now. *See id.* at 888 ("[P]rogram definition is a matter of law.").

Regardless, Mr. Kaper has not plausibly alleged that either of the proposed programs are not meaningfully accessible to persons with mobility disabilities. The crux of Mr. Kaper's allegations relate to the disabled-access routes on the State Game Lands. But two clarifications are necessary before analyzing those allegations

7

in detail.

First, Mr. Kaper alleges that these routes "are the only means that individuals with disabilities have to access the State Game Lands." ECF No. 10 ¶ 51. This is simply not true. As noted above, disabled hunters must use the designated-access routes if they wish to use a ***mobility device*** on State Game Lands. Disabled hunters using ***wheelchairs***, however (whether motorized or not), can "access any portion of State [G]ame [L]ands where pedestrian foot travel is authorized." 58 Pa. Code § 135.50(a). Mr. Kaper's Amended Complaint is noticeably silent about whether and how wheelchairs may be used in State Game Lands, and he does not allege that anyone has been stymied in their attempts to traverse the State Game Lands in, or hunt from, a wheelchair. This is a crucial defect, as nothing in the ADA requires public entities to ensure that disabled individuals can use the vehicle or mobility device of their choosing. *See Baxter v. Pennsylvania Dep' of Corr.*, 661 F. App'x 754, 75–56 (3d Cir. 2016) (summarily affirming summary judgment in favor of defendants on ADA Title II and RA § 504 claims and noting that "the ADA requires only reasonable accommodation, not the accommodation of the plaintiff's choice").

Second, Mr. Kaper alleges that "[t]he PGC forbids disabled hunters from driving off the" disabled-access routes. ECF No. 10 ¶ 91. This is also not true. Anyone with a permit under 58 Pa. Code § 147.1023 may drive their mobility device ***both*** on the disabled-access route ***and*** within up to 100 yards—i.e., one football

8

field—away from them. 58 Pa. Code § 135.53(6). So any suggestion that disabled hunters are limited to hunting from narrow paths should be ignored.

Turning now to Mr. Kaper's other allegations, Mr. Kaper first focuses on the percentage of State Game Lands that have disabled-access routes, and the length of those routes. *See* ECF No. 10 ¶¶ 64–68 (noting that only ~25% of the State Game Lands have disabled-access routes, and that some of these routes are only a "few" miles in length). But these allegations do not move the needle on Mr. Kaper's claims, because public entities are not required to "make each and every portion of a [location] readily accessible in order to comply with the ADA." *Brown*, 736 F. Supp. 2d at 612; *G.P.*, 466 F. Supp. 3d at 890 ("Every school is, to a certain extent, unique, but that does not mean that every school must be accessible."); *cf. Daubert v. Lindsay Unified Sch. Dist.*, 760 F.3d 982, 987 (9th Cir. 2014) ("[T]he fact that the bleachers are not accessible does not amount to exclusion under Title II so long as the School District provides program access to programs at the football field—in this case, football games.").

Mr. Kaper then focuses on the design and maintenance of the disabled-access routes. ECF No. 10 ¶¶ 69–72. But here, Mr. Kaper offers nothing more than conclusory assertions unsupported by factual allegations. He alleges, for example, that the PGC "fails to design th[e] routes so they are accessible, and fails to maintain those routes so they remain accessible[.]" *Id.* ¶ 69. He alleges that "many" routes do

not have entrances that can accommodate "mobility devices" or are "too narrow" for "such devices."[2] *Id.* ¶ 70. And he alleges that "other" routes are "neglected and unusable" due to a "host" of "accessibility issues." *Id.* ¶ 71. Courts routinely ignore such conclusory allegations when deciding Title II claims. *See, e.g.*, *Creel*, 2017 WL 2734709, at *4 (plaintiff alleged that parking was "not located on the safest, most direct route," that it was "more difficult for [him] to travel from point A to B," and that certain slopes "are dangerous and hard to overcome"; court dismissed plaintiff's Title II claim because those "generalized allegations [we]re conclusory and g[a]ve no indication of the factual grounds for claiming lack of access. . . . Which parking lots are deficient? In what way are they not compliant?"). This Court should, too.

The only non-conclusory allegations in the Amended Complaint relate to Mr. Kaper's unsuccessful effort to drive his particular utility vehicle into one particular (and, at 21,054 acres, relatively small) State Game Land during one particular eight-day span. His "anecdotal experience[,]" however, do[es] not establish that the [State Game Lands] program, consisting of [1.5 million acres], is inaccessible when viewed in its entirety." *Kirola*, 860 F.3d at 1184. Most crucially, Mr. Kaper **concedes** that he would have been granted greater access to the State Game Land had he merely asked for it. *See* ECF No. 10¶ 82 (admitting that he "was informed after the fact that

---

[2] These allegations are particularly opaque, since a "mobility device" can be anything from a Segway to a nearly one-ton UTV. 58 Pa. Code §§ 135.49; 135.53(7).

additional locked gates likely could have been opened for him"). In other words, Mr. Kaper does not even plausibly allege that he *himself* was denied "meaningful access" to the State Game Lands. *Alexander v. Choate*, 469 U.S. 287, 301 (1985). Accordingly, he should not now be permitted to sustain a class action lawsuit asserting that the State Game Lands are inaccessible "when viewed in [their] entirety." 28 C.F.R. § 35.150(a).[3]

*   *   *

To sustain his claims, Mr. Kaper must plausibly allege that mobility-disabled individuals do not have meaningful access the State Game Lands. Ignoring the universal wheelchair access permitted in the State Game Lands, Mr. Kaper instead focuses on the number, length, design, and maintenance of the disabled-access routes. But the PGC is under no obligation to ensure that disabled hunters can drive the mobility device of their choosing over every inch of the State Game Lands, and Mr. Kaper's conclusory allegations regarding the condition of the routes should be ignored. Mr. Kaper's only non-conclusory factual allegations relate to his inability to drive around in, and hunt from, his chosen utility vehicle on one particular State

---

[3] Mr. Kaper suggests that the locked gates he encountered demonstrate a violation of 58 Pa. Code § 135.51(b). *See* ECF No. 10 ¶ 101. But PGC's compliance with its own regulations is irrelevant to ascertaining its compliance with federal law. *See, e.g.*, *Dytch v. Lazy Dog Restaurants, LLC*, 2018 WL 9412715, at *8 (N.D. Cal. Apr. 18, 2018) ("[A]n alleged violation of the [California Building Code] c[an] not establish a violation of the ADA.").

Game Land during one particular eight-day period. But he ultimately concedes that he could have gotten meaningful access had he simply asked for it. Mr. Kaper's allegations, then, are insufficient, and this Court should dismiss his ADA and RA claims in their entirety.

### 2.   Mr. Kaper fails to plausibly allege entitlement to damages

A plaintiff seeking compensatory damages[4] under Title II of the ADA or § 504 of the RA or must allege "intentional discrimination." *S.H.*, 729 F.3d at 261. Intentional discrimination includes "deliberate indifference." *Id.* at 264. But deliberate indifference requires a plaintiff to allege both that the defendant (1) had "***knowledge*** that a federally protected right [was] substantially likely to be violated" and (2) "***fail[ed] to act*** despite that knowledge." *Id.* at 265 (emphasis in original).

Mr. Kaper does not plausibly allege that PGC knew that anyone's ADA or RA rights were "substantially likely to be violated." *Id.* Notably, Mr. Kaper does not allege that he told the PGC about his alleged inability to drive his utility vehicle around State Game Lane No. 100 while he was there, such that the PGC had the opportunity to—but refused—to unlock or clear the designated routes. *Cf. Durham v. Kelley*, 82 F.4th 217, 226 (3d Cir. 2023) (plaintiff's "requests for a cane and shower chair were repeatedly refused," and "he complained of pain [but] was

---

[4] Mr. Kaper does not seek punitive damages; those are not available. *See Doe v. Cnty. of Ctr., PA*, 242 F.3d 437, 457–58 (3d Cir. 2001).

ignored"). To the contrary, Mr. Kaper concedes that he "was informed after the fact that additional locked gates likely could have been opened for him." ECF No. 10 ¶ 100.

Instead, Mr. Kaper suggests that PGC somehow had notice that he wished drive around in, and hunt from, his utility vehicle in State Game Land No. 100 based on the permits he applied for and received. *See, e.g.*, ECF No. 10 ¶¶ 55, 56, 88, 107. But these applications and permits reveal that the PGC collects no information about the type of mobility device a disabled hunter may wish to use at any given moment. *See* Ex. 1 (Mr. Kaper's permits and permit applications).[5] And as noted above, these permits are required for everything from a motorized wheelchair, *see* 34 Pa. C.S. § 2923(a.1), to a Segway, *see* 58 Pa. Code § 135.49. So the idea that PGC somehow knew that Mr. Kaper wanted to drive his Mahindra 750 around State Game Land No. 100 is simply not plausible.[6]

Mr. Kaper could not establish deliberate indifference even if the PGC **had** that

---

[5] *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) ("As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a document integral to or explicitly relied upon in the complaint may be considered without converting the motion to dismiss into one for summary judgment.").

[6] Further, permits under 34 Pa. C.S. § 2923 are required when hunting from a mobility device or motorized wheelchair *anywhere* in the Commonwealth, not just on State Game Lands. This makes it especially unlikely that the PGC would **know** that a holder of one intended to visit a State Game Land.

knowledge. The relevant question, as noted above, is whether the State Game Lands, "when viewed in [their] *entirety*," are "readily accessible to and usable by" persons with disabilities. 28 C.F.R. § 35.150(a) (emphasis added). Thus, "allegations relat[ing] to particular deficiencies in individual . . . facilities" are not sufficient. *Twede*, 309 F. Supp. 3d at 904 (dismissing claim). So even if the PGC knew Mr. Kaper wanted to drive his utility vehicle around State Game Land No. 100 (which it did not), and knew he would be unable to do so (Mr. Kaper does not allege that anyone knew about the locked gates or the fallen tree at the time of his trip), this would not show that the PGC knew that its State Game Lands, "when viewed in [their] *entirety*," were not "readily accessible to and usable by" mobility-disabled persons—i.e., would not show that the PGC *knew* the ADA or RA was "*substantially likely* to be violated." *S.H.*, 729 F.3d at 261 (emphasis added).

Mr. Kaper also alleges that the PGC should have proactively done a better job of selecting, evaluating, and maintaining the disabled-access routes. *See, e.g.*, ECF No. 10 ¶¶ 76, 78; *see also id.* ¶ 114 (alleging that "the PGC failed to conduct a comprehensive assessment of the land it controls and/or owns"). But when a plaintiff bases his claim on alleged policy failures, he must allege either "a pattern of past occurrences of injuries like" his, or "that the risk of cognizable harm was . . . great and . . . obvious." *Haberle v. Troxell*, 885 F.3d 170, 181 (3d Cir. 2018). This is because deliberate indifference requires "a deliberate choice," not merely

"negligence or bureaucratic inaction[.]" *S.H.*, 729 F.3d at 263.

Mr. Kaper does not allege any "pattern of past occurrences of injuries like" his. In fact, Mr. Kaper does not allege any past ADA or RA violations by the PGC at all.[7] *Cf. Haberle*, 885 F.3d at 181 (plaintiff alleged the entity had "a history of violating the civil rights of residents"; court held that "a generalized history of civil rights violations . . . would not necessarily demonstrate a pattern of past occurrences of injuries ***like the plaintiff's***" (emphasis in original)).

Nor does Mr. Kaper plausibly allege that the risk of an ADA or RA violation should have been "obvious" to the PGC. Mr. Kaper alleges that "[t]he PGC is aware of disabled hunters that will be hunting these different zones based on the permits applied for and approved." ECF No. 10 ¶ 87. But the relevant question is not whether it was "obvious" that Mr. Kaper or any other mobility-disabled hunters wished to use any specific State Game Land at any given time, or whether it was obvious that those hunters would be impeded in their efforts. Instead, the relevant question is whether it was "obvious" that the State Game Lands, "when viewed in [their] ***entirety***," were not "accessible by and usable by" those persons. 28 C.F.R. § 35.150(a)(1) (emphasis added). Mr. Kaper alleges no facts (such as, perhaps, past

---

[7] As noted below, Mr. Kaper alleges that the PGC was "threatened" with ADA and RA lawsuits. But the mere threat of a lawsuit does not establish its merits—i.e., does not establish that the PGC was actually in violation of the ADA or the RA at that time.

complaints to the PGC from mobility-disabled hunters) that would allow this Court to answer that question in the affirmative.

At most, Mr. Kaper points to comments made during a 2017 meeting of the Pennsylvania Game Commissioners. These comments, however, do not allow one to plausibly infer that the PGC knew or should have known that its operation and maintenance the State Game Lands *years later*[8] did not satisfy the ADA or the RA. If anything, the comments suggest precisely the opposite.

Mr. Kaper notes, for example, that one Commissioner stated during that meeting that all "threatened" ADA "lawsuits [were] history." ECF No. 10 ¶¶ 75–76. And Mr. Kaper notes that the PGC "expect[ed] to see more" vehicles like Mr. Kaper's UTV on State Game Lands. But crucially, Mr. Kaper concedes that these comments were made about "recent amendments to the regulations" that *greatly increased* disabled hunters' access to the State Game Lands. *See id.* ¶ 75.

Indeed, the minutes from this meeting[9] reveal that the PGC "ha[d] recently conducted an extensive review of public access to [S]tate [G]ame [L]ands by persons

---

[8] The statute of limitations for claims under both Title II of the ADA and Section 504 of the RA is two years. *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008). So the earliest any compensable claim of any proposed class member accrued was in January 2022.

[9] The Court can judicially notice these minutes. *See Jaludi v. Citigroup*, 2020 WL 7086142, at *2 n.2 (M.D. Pa. Aug. 12, 2020) (a court may "take judicial notice of records and reports of administrative bodies"); *In re Burlington Coat Factory Sec.* Litig., 114 F.3d at 1426.

with mobility challenges." Ex. 2 (transcribed minutes of September 26, 2017 meeting of the PGC) at 12. They reveal that "one of [the PGC's] most hardened critics"—who perhaps "threatened" the referenced "lawsuits"—"supported everything that [the Commissioners] ha[d] in . . . th[e] proposal" to increase disabled hunters' access to the State Game Lands. *Id.* at 13. And regarding the expected influx of hunters on UTVs, the minutes reveal that the PGC specifically believed that the new regulations were "going to ***increase*** opportunities for those individuals[,] . . . get them into places that they probably haven't been to for quite some time[,] . . . [and] keep [them] in the game for a much longer period of time[.]" *Id.* at 14–15 (emphasis added).

This perhaps explains why the Commissioner believed that the "threatened" lawsuits were "history." Regardless, it certainly does not support an inference that the PGC knew or should have known that it was operating its State Game Lands in violation of the ADA and the RA at that time (or years later). Instead, in harmony with the PGC's public commitment "to promot[ing] public access to State [G]ame [L]ands for persons with mobility disabilities," ECF No. 10 ¶ 46, these statements and regulations suggests that the PGC believed that State Game Lands, "when viewed in [their] entirety," were ***in fact*** "accessible and usable by" mobility-disabled hunters. 28 C.F.R. §35.150(a)(1); *cf. Haas v. Quest Recovery Servs., Inc.*, 247 F. App'x 670, 673 (6th Cir. 2007) (dismissing Title II claim because the public entity

took steps to ensure that its programs were ADA-complaint).

*      *      *

Mr. Kaper does not allege that he informed anyone of his access problems in real-time. His suggestion that the PGC should know when and how mobility-disabled hunters wish to use the State Game Lands is belied by the documents he references. And his reliance on comments made in 2017 suggest that the PGC in fact believed it was satisfying its obligations under federal law. Mr. Kaper, therefore, has not plausibly alleged that the PGC knew or should have known that it was violating the law. That lack of knowledge, in turn, precludes Mr. Kaper's request for damages. This Court should thus dismiss it.

3.      A replacement elk tag will not remedy the purported violations.

It is well-established that "the nature of the violation determines the scope of the remedy," so any injunctive "remedy imposed must be tailored . . . to redress the . . . wrong at issue." *Imprisoned Citizens Union v. Ridge*, 169 F.3d 178, 188 (3d Cir. 1999); *see also Lewis v. Casey*, 518 U.S. 343, 357 (1996) (any "remedy must of course be limited to the inadequacy that produced the injury-in-fact that the plaintiff has established"). Mr. Kaper asks this Court for an injunction requiring the PGC to issue new elk tags to him and any other disabled hunters who were unable to access

State Game Lands.[10] Mr. Kaper, however, does not assert or argue that the PGC's operation of the elk tag lottery violated the ADA, the RA, or any other federal or state law. He does not, for example, allege that disabled hunters are less likely to win a tag, or that disabled hunters encounter obstacles when entering the lottery that able-bodied hunters do not. Instead, Mr. Kaper's claim is that the State Game Lands have too few, and insufficiently maintained, disabled-access routes. Reissuing an elk tag to Mr. Kaper or any other disabled hunter will, of course, not remedy this purported problem. The Court should therefore dismiss Mr. Kaper's request for such relief. *See Glover v. City of Laguna Beach*, 2016 WL 11520619, at *7 (C.D. Cal. Feb. 10, 2016) ("Plaintiffs' requested relief . . . is not aligned with the nature of the alleged ADA violation.").

## V.    Conclusion

Mr. Kaper allegedly had an unfortunate experience at one of the PGC's hundreds of State Game Lands. That isolated incident, however, does not show that the State Game Lands, "when viewed in [their 1,500,000 acre] entirety," are not "accessible to and usable by" persons with mobility disabilities. So his Amended Complaint should be dismissed in its entirety. If it is not, his request for compensatory damages should be dismissed, because there are no allegations that

---

[10] The PGC cannot voluntarily provide this relief itself; under Pennsylvania law, elk tags can only be issued pursuant to "a random drawing." 34 Pa. C.S. § 2706.2(a).

the PGC knew about his inability to access that State Game Land, let alone about a systemic failure across all State Game Lands. And Mr. Kaper's request for a new elk tag should be dismissed because it will do nothing to cure the purported ADA and RA violations.

Respectfully submitted,

MICHELLE A. HENRY
Attorney General

By:  */s/ Jacob Frasch*
Jacob Frasch
Deputy Attorney General
Attorney ID No. 328362

Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA 17120
(717) 783-7560
jfrasch@attorneygeneral.gov

Nicole R. DiTomo
Chief Deputy Attorney General
Civil Litigation Section

Date: April 24, 2024

Counsel for Defendant the
Pennsylvania Game Commission

## LOCAL RULE 7.8(b)(2) CERTIFICATE

I certify that the body of this brief contains exactly 4,996 words and thus complies with Local Rule 7.8(b)(2).

*/s/ Jacob Frasch*
Jacob Frasch
Deputy Attorney General

## CERTIFICATE OF SERVICE

Pursuant to Local Rule 4.2, I certify that a true and correct copy of the foregoing was served on the following individuals via the indicated means on April 24, 2024:

VIA ELECTRONIC FILING

Helen Chandler Steiger, Esquire
Kevin Abramowicz, Esquire
Kevin W. Tucker, Esquire
Stephanie Moore, Esquire
East End Trial Group
6901 Lynn Way, Suite 215
Pittsburg, PA  15218
csteiger@eastendtrialgroup.com
kabramowicz@eastendtrialgroup.com
ktucker@eastendtrialgroup.com
smoore@eastendtrialgroup.com
*Counsel for Plaintiff*

Thomas M. Pie, Esquire
Law Firm of Thomas M. Pie, Jr., LLC
210 Watters Station Road
Evans City, PA  16033
tmp@pielaw.net
*Counsel for Plaintiff*

*/s/ Jacob Frasch*
Jacob Frasch
Deputy Attorney General